UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANUEL DE JESUS ROSARIO,<br><br>    Plaintiff,<br><br>  -against-<br><br>MIS HIJOS DELI CORP., PALMA GROCERY CORP., 251 E. 123RD ST. REALTY, LLC, JOSE PALMA, LEONIDA COLLADO, and JUNIOR PALMA,<br><br>    Defendants. | 15-cv-6049 (JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.

  Before the Court is the motion of plaintiff Manuel de Jesus Rosario for an order finding defendants 251 E. 123rd St. Realty, LLC ("Realty"), Jose Palma ("Palma Senior"), and Jose Palma Jr. ("Palma Junior") (collectively, the "Transferring Defendants")[1] in contempt for transferring the property located at 251 E. 123rd Street, New York, NY 10035 (the "Property") in violation of an Order of this Court dated March 12, 2020 (the "March 12 Order"). Relatedly, plaintiff seeks to obtain discovery of the Transferring Defendants communications with prior counsel relating to their alleged knowledge of and involvement in the contested transfer

---

[1]  Plaintiff does not bring this motion against defendants Mis Hijos Deli Corp., Palma Grocery Corp., and Leonida Collado.

1

(the "Transfer"). For the reasons set forth below, the motion is denied without prejudice to renewal.

I. Background

This case began on August 3, 2015, when plaintiff sued defendants, claiming that during his time as an employee for defendants, they failed to pay the minimum wage, overtime pay, and spread of hours pay required by the Fair Labor Standards Act and the New York State Labor Laws. Dkt. No. 1. On March 3, 2020, after a jury trial and jury verdict in favor of plaintiff, the Court entered judgment for plaintiff in the amount of $89,670.35. Dkt. Nos. 157 & 162.

On February 14, 2020, during post-trial proceedings, counsel for plaintiff made an oral application for an order preventing the defendants from transferring or encumbering the Property. See Transcript dated February 14, 2020, Dkt. No. 185, at 14:11-21. Counsel for plaintiff also requested temporary relief to that effect, pending the Court's decision on the motion. Id. at 16:6-11. The Court denied the motion for immediate relief, observing:

> I have been impressed by both counsel's respect for the rule of law throughout this trial, and I think defense counsel will simply tell his clients: Don't do anything about this building or any similar asset until the judge rules on March 6. I think that's good enough. I don't think we need anything more formal. I had a chance to have all three personal defendants take the stand. I got a good feel for the fact that though they may have made mistakes in the past, they seem to have turned the corner and seem to be anxious to keep their nose clean, so to

speak, in the future. So I don't think we need anything more formal.

Id. at 16:12-23. Soon thereafter, plaintiff filed a written motion for the same relief. Dkt. No. 161. Defendants did not oppose. On March 12, 2020, the Court granted the motion and issued an attachment order, restraining "defendants, their agents, subdivisions, servants, employees, successors, and attorneys . . . from directly or indirectly transferring or encumbering the [Property]." Dkt. No. 166.

On September 14, 2020,[2] plaintiff brought the instant motion for contempt against the Transferring Defendants, alleging that on September 1, 2020, they filed a deed dated January 28, 2020 (the "Deed"), transferring the Property from Realty to Maria M. Vallejos as Trustee of the Jose Palma Irrevocable Trust (the "Trust"). Dkt. No. 182.[3] Plaintiff also seeks to obtain discovery of attorney-client communications relating to the Transfer.

---

[2] That same day, the attorneys that had been representing the defendants moved to withdraw from the case on the ground that they were no longer getting paid. Dkt. No. 178. Over plaintiff's opposition, the Court granted the motion to withdraw on October 6, 2020. Dkt. No. 191. Defendants remained unrepresented until Joseph Nohavicka, Esq., entered a notice of appearance on their behalf on November 13, 2020, Dkt. No. 192, at which point the Court finalized the briefing schedule on the instant motion, Dkt. No. 200.

[3] A few days before filing the instant motion, plaintiff also brought a new action, since assigned to the undersigned, alleging that the Transfer was a fraudulent conveyance. See 20-cv-7387, Dkt. No. 1. Discovery is ongoing in that action.

II.     Discussion

   A. Motion for Contempt

   Plaintiff contends that the Transferring Defendants violated the March 12 Order by transferring the Property from Realty to Maria M. Vallejos as Trustee of the Trust on September 1, 2020. The Transferring Defendants respond that contempt is unwarranted either because the Property was actually transferred on January 28, 2020, before the March 12 Order barred them from doing so, or, in any event, because the Transfer has since been unwound.

   "[A] district court's contempt power is narrowly circumscribed." Gucci America, Inc. v. Weixing Li, 768 F.3d 122, 142 (2d Cir. 2014). To warrant contempt, the moving party must show "that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." Id.

   Here, the parties largely focus on the second element and dispute whether plaintiff has presented clear and convincing evidence that the Transferring Defendants transferred the Property in contravention of the March 12 Order. Under New York law, "[a] grant [of real property] takes effect, so as to vest the estate or interest intended to be conveyed, only from its delivery." N.Y. Real Prop. Law § 244. "As a general rule, a deed is presumed to have been delivered and accepted at its date." M & T Real Estate

4

Trust v. Doyle, 20 N.Y.3d 563, 568 (2013). This presumption may be overcome, however, "by evidence of the parties' actual intent." Wisdom v. Reoco, LLC, 162 A.D.3d 1380, 1382 (3d Dep't 2018). It is undisputed here that the Deed was dated January 28, 2020. See Plaintiff's Memorandum of Law in Support of Motion for Contempt ("Pl. Mem."), Dkt. No. 184, at 2. A presumption therefore attaches that the Deed was delivered, and the Property transferred to the Trustee, on January 28, 2020, that is, before the March 12 Order.

To overcome this presumption, plaintiff contends that the transferring parties -- namely, Palma Senior as grantor and the Trustee as grantee -- did not intend for the Property to transfer on that date. Plaintiff points out that the Trustee was not involved in the Transfer; rather, Palma Junior executed the Deed as "attorney in fact" for the Trustee. Id. at 2-3. Plaintiff speculates that this enabled Palma Senior to execute the Deed "without unequivocally intending to transfer title" and to "retain the Deed and destroy it if there was no liability found at trial against defendant Realty, but to have an earlier transfer date in the event liability was found." Id. Because the purported grantee was not involved in the Transfer and the Deed was not recorded for months thereafter, plaintiff insists there is sufficient evidence to overcome the presumption and conclude that the Deed was not actually transferred until it was recorded on September 2, 2020.

5

In response, the Transferring Defendants contend that they took no action after the Deed was executed on January 28, 2020. See Memorandum of Law in Opposition to Plaintiff's Motion for Contempt ("Def. Mem."), Dkt. No. 195, at 3. According to the sworn declaration of Palma Senior, the Transferring Defendants believed that the Deed had been sent to the title company to be recorded, and they do not know why it was left unrecorded until September 2, 2020. Declaration of Jose Palma in Opposition to Plaintiff's Motion for Contempt ("Palma Decl."), Dkt. No. 194, at ¶¶ 13-14. Since none of the Transferring Defendants took any affirmative action in contravention of the March 12 Order, the Transferring Defendants conclude, they should not be held in contempt of that Order.

Plaintiff, however, argues that this is no defense at all. To the contrary, by acknowledging that they took no further action with respect to the Transfer after January 28, 2020, the Transferring Defendants effectively concede that the Deed was not delivered to the Trustee, at least until it was recorded. Plaintiff's Reply Memorandum of Law in Further Support of Motion for Contempt ("Reply"), Dkt. No. 203, at 2.

As a second defense, the Transferring Defendants report -- and submit corroborating documents to show -- that the Property was transferred back from the Trustee to Realty on November 23, 2020 and a subsequent deed was sent for expeditated recordation on November 25, 2020. Supplemental Declaration of Joseph D. Nohavicka

6

in Opposition to Plaintiff's Motion for Contempt ("Def. Supp."), Dkt. No. 201, ¶¶ 2-3.[4] Nohavicka -- who was only retained after the Transfer was made -- assures the Court that he advised his clients that the Transfer, even if made in good faith, was "ill-advised." Def. Mem. at 3.

This is not to say that the circumstances regarding the Transfer seem any less suspicious, and give the Court pause as to whether its earlier confidence in defendants, as set forth on pages 2-3, supra, was misplaced. Nevertheless, the Court, for now, denies plaintiff's motion for contempt. As the Transferring Defendants now recognize, the initial transfer, made on the eve of trial, was ill-advised. Indeed, it may well have been a fraudulent conveyance, an issue that is currently being litigated in the related action before this Court. However, even assuming arguendo that plaintiff has overcome the presumption that the Transfer occurred on January 28, 2020, plaintiff has provided no evidence that the Transferring Defendants themselves took any action to complete the Transfer after the March 12 Order. While the Deed was recorded on September 2, 2020, the Transferring Defendants swear that they were not involved in recording the Deed and do not know the cause of the

---

[4] Plaintiff contends that the supplemental declaration should be disregarded because it was submitted without prior leave of the Court. Reply at 3. While the Court will not disregard the supplemental declaration, it reminds defense counsel that parties must receive prior leave of the Court before making any submission.

7

months-long delay between the execution of the Deed and its recordation. See Palma Decl. ¶¶ 13-14. Instead, they affirm that they believed that, upon execution, the Deed would be forwarded to a title company that would then record it. See id. ¶ 14. In other words, they believed, perhaps wrongly as it turns out, that the Property had been transferred before the March 12 Order. Crediting that sworn testimony, the Court will not, on the present record, find the Transferring Defendants in contempt for their failure to stop a transfer that they assert that they believed had already been completed, especially considering it has since been unwound.

On that last point, the Court acknowledges plaintiff's concerns over the efficacy of the second deed that purportedly unwound the Transfer. That deed, plaintiff points out, was executed not by the Trustee but by Palma Senior, and there is no indication that Palma Senior signed it other than in his individual capacity. Reply at 3-4. Moreover, the Trust is an irrevocable one, and there is no evidence that establishes under what conditions, if any, property belonging to the Trust could be transferred out. Id. at 3. To ensure that the Transfer has, in fact, been unwound, the Court directs defense counsel to work with his clients to cure the deficiencies identified by plaintiff in the subsequent deed.

While the Court denies plaintiff's motion at this time, the denial is without prejudice. That is, plaintiff is free to renew the motion in the event that discovery in the ongoing fraudulent

8

conveyance action turns up further evidence of misconduct on the part of the Transferring Defendants.

B. Request for Discovery of Attorney-Client Communication

Plaintiff also requests that he be permitted discovery of communications between the Transferring Defendants and prior counsel concerning the Transfer on the basis of the crime-fraud exception to attorney-client privilege. Pl. Mem. at 4. "A party wishing to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime." United States v. Jacob, 117 F.3d 82, 87 (2d Cir. 1997), abrogated on other grounds by Loughrin v. United States, 573 U.S. 351 (2014).[5]

To satisfy that burden, plaintiff largely relies on the suspicious timing of the Transfer, inferring that "everyone involved knew that the Trust was being created, and the [Property] was being transferred into the Trust solely to fraudulently shield

---

[5] Some lower courts have pointed out that the Second Circuit has applied the "probable cause" standard only in criminal proceedings, see, e.g., In re Omnicom Group, Inc. Securities Litigation, No. 02-cv-4483 (WHP)(MHD), 2007 WL 2376170, at *9 (S.D.N.Y. Aug. 10, 2007), leaving open the question whether the same standard should apply in a civil proceeding like this one. Here, however, plaintiff assumes that the probable cause standard applies to the instant dispute, Pl. Mem. at 4, and the Court will assume the same.

9

the [Property] from Plaintiff's collection efforts." Pl. Mem. at 4. Plaintiff has a point: the Trust was created on May 1, 2019, well after litigation commenced, and the Deed was executed on January 8, 2020, just eight days before trial was set to begin. Pl. Mem. at 4.

Even if the timing of these events were enough to establish probable cause of the existence of fraud, however, the Court finds that plaintiff has failed to establish that former counsel engaged in any attorney-client communication in furtherance of that fraud. On that front, plaintiff simply speculates that "[i]t is inconceivable that from May 1, 2019 to September 1, 2020 [Defendants] did not discuss and seek the advice of their counsel in setting up and carrying out this scheme. Id. at 5. But plaintiff's theory would effectively abrogate the second prong of the crime-fraud exception in fraudulent conveyance actions, where, as here, the moving party articulates an inchoate suspicion that lawyers must have somehow been involved in effectuating the contested transfer. Without, at least, some evidence that former counsel were involved in the creation of the Trust or the effectuation of the Transfer, the Court will not pierce "the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389, (1981). Accordingly, plaintiff's request for discovery of attorney-client communication is denied.

10

The Clerk of the Court is directed to close docket number 182.

SO ORDERED.

Dated:   New York, NY

        December 9, 2020        JED S. RAKOFF, U.S.D.J.